IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH M. STEWART, | : | Case No. 4:14-CV-1050 |
| | : | |
| Plaintiff, | : | |
| v. | : | (Judge Brann) |
| | : | |
| KEYSTONE REAL ESTATE | : | |
| GROUP LP, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

March 31, 2015

Plaintiff Deborah M. Stewart brought the current action against her former employer alleging claims of gender discrimination and sexual harassment and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and a sexual orientation discrimination claim under the State College, Centre County, Pennsylvania, Anti-Discrimination Ordinance 1967. Before the Court is Defendant Keystone Real Estate Group, LP's Motion to Dismiss and Motion to Strike.  The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1367.

The Parties have briefed the issues and they are ripe for resolution.  For the following reasoning, Defendant's Motion to Dismiss is granted, and Defendant's Motion to Strike is granted in part and denied in part.

## I.    BACKGROUND[1]

Plaintiff Deborah Stewart was a female employee of Defendant Keystone Real Estate Group, LP.  Stewart was involved in a private romantic relationship with a female co-employee, Amanda Thomas.  Pl.'s Am. Compl. ¶ 33, Jun. 25, 2014, ECF No. 4 [hereinafter "Compl."].  Stewart alleges that she was subjected to a sustained pattern of discriminatory verbal attacks for her sexual orientation and failure to conform to gender stereotypes regarding her sexual preferences.  See generally Compl.  Keystone's Chief Operating Officer Mary Frantz Adams, Human Resource Manager Matthew Rager, and Maintenance Coordinator Glen Miller, were the principal alleged perpetrators of this discrimination, along with other Keystone employees.  See, e.g., Compl., ¶¶ 102, 143, 154.  Stewart also alleges that over the course of her tenure, Rager, Miller, and other Keystone employees made inappropriate and vulgar sexual advances toward her, including exposing themselves and soliciting sexual favors from Stewart.  See, e.g., Compl., ¶¶ 40–42.

Ultimately, Keystone terminated Stewart from her job.  She alleges that this termination was based on both sexual orientation and gender discrimination.  The

---

[1] The following facts are articulated solely for the purposes of deciding this motion to dismiss and are viewed in the light most favorable to the Plaintiff.

Defendant seeks to dismiss both Stewart's gender discrimination claim under

federal law and sexual orientation discrimination claim under municipal law.  The

Court now analyses Defendant's arguments under the motion to dismiss standard.

## II.   DISCUSSION

### A.   <u>Motion to Dismiss Standard</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>,

550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has

acted unlawfully." <u>Iqbal</u>, 556 U.S. at 662.  The standard seeks to eliminate those

claims that do not present "enough" factual matter, assumed to be true, "to raise a

reasonable expectation that discovery will reveal evidence" in support of the

claims.  <u>Twombly</u>, 550 U.S. at 556.  Where a plaintiff fails to nudge his "claims

across the line from conceivable to plausible, [his] complaint must be dismissed."

<u>Id.</u>, 550 U.S. at 570.

To determine the adequacy of a complaint under this standard, a court

should: (1) identify the elements of the claim(s); (2) review the complaint to strike

conclusory allegations; and the, (3) consider the well-plead components of the

3

complaint and evaluate whether all elements previously identified are sufficiently alleged.  <u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011).  All well-pleaded facts must be accepted as true at this juncture.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210–11 (3d Cir. 2009).

## B.   **Merits**

### 1.   <u>Gender Discrimination Claim</u>

Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, provides that "[i]t shall be an unlawful employment practice . . . to discriminate against any individual . . . because of . . . sex." 42 U.S.C. § 2000e 2(a)(1).  To state a *prima facie* case of gender discrimination, a plaintiff must prove that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; (4) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination.  <u>See, e.g.</u>, <u>Wooler v. Citizens Bank</u>, 274 Fed. App'x 177, 180 (3d Cir. 2008) (citing <u>Texas Dep't of Cmty. Affairs v. Burdline</u>, 450 U.S. 248, 253 (1981)).  The flashpoint of contention on this Motion is the fourth element: the Defendants argue that Stewart cannot demonstrate that her termination occurred under circumstances that give rise to an inference of unlawful discrimination because it is predicated on allegations of sexual orientation discrimination, which Title VII does not protect

against.

The United States Court of Appeals for the Third Circuit has stated that, "[h]arassment on the basis of sexual orientation has no place in our society . . . . It is clear, however, that Title VII does not prohibit discrimination based on sexual orientation." Bibby v. Philadelphia Coca Cola Bottling Co., 260 F.3d 257, 261 (3d Cir. 2001). Congress has repeatedly rejected legislation that would have extended Title VII's reach to protect against sexual orientation discrimination. See, e.g., Employment Nondiscrimination Act of 1996, S.2056, 104th Cong. (1996); Employment Non Discrimination Act of 1995, H.R. 1863, 104th Cong. (1995)l Employment Non-Discrimination Act of 1994, H.R. 4636, 103d Cong. (1994).

Stewart may, however, state a claim for gender discrimination based on her failure to conform to gender stereotypes. This theory originated with the United States Supreme Court decision in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), where the Court reviewed the sex discrimination claim of a woman, Ann Hopkins, whose candidacy for partnership in the accounting firm was placed on hold amidst comments that she was "macho," "overcompensated for a being a woman," and could use "a course at charm school." Price Waterhouse, 490 U.S. at 235. Further, the partner who informed Hopkins why her candidacy was on hold advised her to "walk more femininely, talk more femininely, dress more

femininely, wear make-up, have her hair styled, and wear jewelry." Id.

A plurality of the Court emphasized that "[w]e are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group." Id. at 251.  The Court continued that "in the specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender." Id. at 250.

Other courts have held that this reasoning is applicable to male employees abused because they are perceived as insufficiently masculine.  See, e.g., Kay v. Independence Blue Cross, No. Civ. A. 02-3157, 2003 WL 21197289 (E.D. Pa. 2003).  The United States Court of Appeals for the Seventh Circuit has found that "a man who is harassed because his voice is soft, his physique is slight, his hair is long, or because in some other respect he exhibits his masculinity in a way that does not meet his coworkers' idea of how men are to appear and behave, is harassed 'because of' his sex." Doe v. City of Belleville, 119 F.3d 563, 581 (7th Cir. 1997).

The United States Court of Appeals for the Third Circuit addressed the gender stereotyping theory in Bibby v. Philadelphia Coca Cola Bottling Co., 260 F.3d 257 (3d Cir. 2001).   The court explainted that a plaintiff may demonstrate

that harassment was discrimination based on sex in violation of Title VII by

showing that the "harasser was acting to punish the victim's noncompliance with

gender stereotypes." Id. at 264.  The court held, however, that Bibby could not

bring a claim for gender stereotyping because:

> [H]e did not claim that he was harassed because he failed to comply
> with societal stereotypes of how men ought to appear or behave . . . .
> His claim was, pure and simple, that he was discriminated against
> because of his sexual orientation.  No reasonable finder of fact could
> reach the conclusion that he was discriminated against because he was
> a man.

Id. at 264.

Further, the Third Circuit stated that plaintiffs are not required to "prove

their harassers were not motivated by anti-gay animus" to proceed under this

theory.  Id. at 265.  The Court continued: "[w]hatever the sexual orientation of a

plaintiff . . . that plaintiff is required to demonstrate that the harassment was

directed at him or her because of his or her sex.  Once such a showing has been

made, the sexual orientation of the plaintiff is irrelevant." Id.  Furthermore,

"[o]nce it has been shown that the harrassment was motivated by the victim's sex,

it is no defense that the harassment may have also been partially motivated by anti-

gay or anti-lesbian animus." Id.

"The line between discrimination based upon sexual orientation is difficult

to draw and . . . some of the complained of conduct [may fit] within both rubrics."

7

Kay v. Independence Blue Cross, 142 Fed. App'x 48, 51 (3d Cir. 2005) (Rendell,

J., concurring).  In the case before the Court, the pleadings are replete with facts

that demonstrate that Stewart was discriminated against because of her sexual

orientation, and that she repeatedly endured and deflected the harassing sexual

advances of male colleagues.

Facts indicating sexual orientation discrimination are rife throughout the

complaint.  For example, Stewart alleges the following exchange in a meeting with

Chief Operating Officer Mary Adams:

> 82.  At no point during the meeting of October 3rd did Adams state
> that Steward and Thomas were in violation of any specific Keystone
> policy regarding inter-office relationships.  Her only concern was with
> the same sex nature of the relationship
>
> 83.  Adams ended the meeting by stateing that "this kind of behavior
> and relationship will not be tolerated within this firm and once I finish
> my investigation about you and [Thomas] I will determine what I plan
> on doing, but the outcome doesn't look very good for either of you." .
> . . .
>
> . . .
>
> 88.  Adams also expressed her disgust and disapproval of Thomas'
> relationship with Stewart, or any woman generally.  Adams said she
> was disappointed with Thomas for engaging in a homosexual
> relationship and expressed her disapproval of same-sex relationships.
>
> 89.  Adams ended the meeting with Thomas by threatening to take
> further action against Thomas if Adams were to find out that Stewart
> and Thomas continued to engage in any kind of relationship together.

Compl., ¶¶ 83–84, 89–90.  The Complaint contains other similar allegations of sexual orientation discrimination.

The Complaint is also riddled with allegations of vulgar sexual advances made toward Stewart by Keystone employees.  Stewart alleges a number of continually recurring instances where Rager and Miller exposed their genitals to her and solicited her sexual favors.  They even complimented her appearance, albeit with prurient intent.   For example, Plaintiff alleges that Rager commented that "her thighs were looking good in her jeans," among other such statements. Compl., ¶ 129.

While disturbing, these facts do not support a claim of gender discrimination.  Stewart clearly alleges sexual orientation discrimination and sexual harassment.  Stewart does not, however, allege any facts similar to those that courts have found give rise to gender discrimination.  There are no facts whatsoever demonstrating Stewart was discriminated for not appearing and acting within the antiquated feminine paradigm.

Unlike Hopkins, there were no allegations that Stewart was discriminated against for not appearing feminine or as if she required a course at charm school. See Price Waterhouse, 490 U.S. at 235.   In fact, Plaintiff alleges that Rager complimented her appearance during his sexual advances.  The fact that his

advances were unrequited does not constitute gender discrimination, but, without more, are facts supporting a claim of sexual harassment.

Plaintiff attempts to further her claim by demonstrating that there were similarly situated male colleagues that were not treated the same when they engaged in heterosexual relationships within the office.  The entire focus of those allegations, however, is on their disparate treatment for actions based on their sexual orientation, not their gender.  See, e.g., Wooler, 274 Fed. App'x at 181 (affirming the district court's grant of summary judgment because the female plaintiff failed to provide any evidence that similarly situated males were treated differently).

While these facts appear sufficient to support her sexual harassment claim under Title VII (a claim which the Defendants do not challenge at this stage), they simply do not support a gender stereotyping claim under the same.  Accordingly, that claim is dismissed.  Because the claim is dismissed due to factual deficiencies rather than a legal bar, however, and because Defendant has not argued that amendment would be futile, the Plaintiff is granted leave to amend on this count. See, e.g. Azubuko v. Eastern Bank, 160 Fed. App'x 143, 145 (3d Cir. 2005) ("Amendment should be permitted unless it would be inequitable or futile.").

2.    State College Ordinance 1967 Claim

Count III of Plaintiff's Complaint is styled as "State College Ordinance 1967, Anti-Discrimination in Employment Provisions Discrimination Because of Sexual Orientation." 171. Section 962.1 of the Pennsylvania Human Relations Act permits local governments to establish human relations commissions with "powers and duties similar" to those exercised by the Pennsylvania Human Relations Commission. Pa. C.S. § 962.1(d). The Borough of State College, Centre County, Pennsylvania, adopted Ordinance 1967 ("Anti-Discrimination Ordinance") pursuant to Section 962.1 of the PHRA, constituting sexual orientation discrimination a civil wrong within its jurisdiction.

Courts have determined that where a local ordinance is adopted pursuant to the PHRA, the exhaustion of administrative remedies is required prior to filing a lawsuit. See, e.g., Richards v. Foulke Assocs., Inc., 151 F. Supp. 2d 610, 614 (E.D. Pa. 2001). Pursuant to Section 907 of the Anti-Discrimination Ordinance, a complaint must be received within 180 days of the alleged act of discrimination. Ordinance 1967, § 907, ECF No. 17-3. The Ordinance grants a person a private right of action in the Centre County Court of Common Pleas or any other court of competent jurisdiction: "1) upon receipt by the aggrieved Person(s) of notice that the Commission has dismissed the complaint; or 2) if not such notice is received, after one (1) year from the date of the filing of the complaint." Id. § 908. Further,

the Ordinance provides that it "shall have no jurisdiction over matters which are the subject of pending or prior filings made by an aggrieved person before any state or federal court or agency of competent jurisdiction." Id., § 909.

In the Complaint, Plaintiff failed to plead any facts relating to her filings pursuant to the Anti-Discrimination Ordinance.  Plaintiff has not established that she timely filed and exhausted her administrative remedies as required by the Ordinance.  Because Plaintiff asserts in her Brief that she can satisfy these requirements, however, leave to amend would not be futile.  Accordingly, this claim is dismissed without prejudice and Plaintiff is granted leave to ament.

### C.    <u>Motion to Strike</u>

The Defendant seeks to strike several pleadings from Plaintiff's Complaint arguing that they "malign and defame the management of Keystone by placing scandalous and inflammatory allegations in the Amended Complain."  Def.'s Br. 11, Sept. 15, 2014, ECF No. 15.  Federal Rule of Civil Procedure 12(f) permits courts to strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to strike are decided on the pleadings alone, and should not be granted unless the relevant insufficiency is "clearly apparent."  <u>Cipollone v. Liggett Group, Inc.</u>, 789 F.2d 181, 188 (3d Cir. 1986).

While "courts possess considerable discretion in weighing Rule 12(f) motions, such motions are not favored," and Courts are reticent to grant them. <u>Miller v. Grp. Voyagers, Inc.</u>, 912 F. Supp. 164, 168 (E.D. Pa. 1996). One court noted that a motion should "be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." <u>Hanselman v. Olsen</u>, No. 4:05-CV-1834, 2006 WL 47655, *1 (M.D. Pa. Jan. 9, 2006) (McClure, J.) (internal quotations and citation omitted).  Furthermore, Courts have identified possible prejudice to a party as an important consideration in deciding motions to strike.  <u>See, e.g.</u>, <u>Miller</u>, 912 F. Supp. at 168 (E.D. Pa. 1996).

In this case, Defendant seeks to strike paragraphs 76–80, 123 and 141 stricken from the Plaintiff's Complaint.  The objectionable material in these paragraphs falls into two distinct categories: i) scandalous and graphic sexual depictions; and, ii) references to criminal drug activity.  The material concerning sexual episodes is relevant and should not be stricken, because they relate to the Plaintiff's harassment and hostile work environment claims.

The references to criminal drug activity, however, are immaterial, prejudicial, and are therefore stricken from the Complaint.  None of the Plaintiff's claims of discrimination depend or even relate to the existence of the alleged

criminal drug activity of Keystone employees, and the allegations are prejudicial. Accordingly, paragraphs 123 and 141 are stricken from the Complaint.

## III.    CONCLUSION

The Defendant's Motion to Dismiss is granted.  Plaintiff's Title VII gender discrimination claim and State College Ordinance of 1967 claim are dismissed without prejudice.  The Defendant's Motion to Strike claim is denied in part and granted in part.

An appropriate Order follows.


BY THE COURT:


s/ Matthew W. Brann
Matthew W. Brann
United States District Judge